IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAM GORDON LUSK, et al.,

        Plaintiffs,

v.                                                                   No. 6:08-cv-182 MV/KBM

EUGENE SANCHEZ, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss for Discovery Abuse (Doc. 220). The motion seeks dismissal of Ms. Lusk's claims against Defendants based on her failure to disclose medical care she received in 2002.

## BACKGROUND

This case arises out of a December 29, 2004 automobile accident. One of the plaintiffs, Billye Lusk, alleges injuries to both her knees as a result of the accident and seeks to recover damages relating to those injuries.

Trial was originally scheduled for January 18, 2011. (Doc. 139). However, on December 22, 2010, Plaintiffs filed a motion seeking to vacate the January trial setting on the basis that Ms. Lusk needed time to recover from two knee surgeries that had been performed earlier that month by Dr. Jensen. (Doc. 157). Plaintiffs contend the surgeries were necessitated as a result of the 2004 automobile accident. (*Id.* at ¶ 11). The Court granted the motion to vacate the January trial date, but did not vacate the January 4, 2011 pretrial conference. (Doc. 174). At the pretrial conference, the Court ordered further briefing on the admissibility and scope of allowable testimony from Dr. Jensen, who had not previously been disclosed as a

witness, but who had apparently started treating Plaintiff in November 2010. (Doc. 176).

On March 15, 2010, the Court held a second pretrial conference. At that pretrial conference, after hearing additional argument on the matter, the Court ruled that it would permit Dr. Jensen to testify as a treating physician, but not as an expert witnesses, and ordered that counsel for Plaintiffs make Dr. Jensen available for deposition. (Doc. 200). The Court further advised Defendants during the pretrial conference that after Dr. Jensen was deposed, Defendants could, if they believed it was merited based on the discovery they received, file a motion for fees incurred as a result of the deposition. (*Id.*).

On March 22, 2011, Plaintiffs served Defendants with supplemental trial exhibits; these exhibits contained a March 17, 2011 patient ledger for Ms. Lusk from the Athletic Orthopedic & Knee Center where Dr. Jensen practices. (Doc. 220, Exs. F-G). The ledger contains three entries from September 16, 2002 (one for "NEW PT COMPREHENSIVE" and two for "X-RAY KNEE 3 VIEWS") and one entry for September 19, 2002 ("PHYSICAL THERAPY EVAL"). (Doc. 220, Ex. G). There are no subsequent entries until November 2010. (*Id.*). No other records relating to the health care Ms. Lusk received in September 2002 were produced.

On March 31, 2011, Dr. Jensen was deposed. At his deposition, Dr. Jensen agreed that the ledger appeared to indicate that Ms. Lusk had presented to the Athletic Orthopedic & Knee Center on September 16, 2002 with complaints relative to her knees and that on September 19, 2002, she had a physical therapy evaluation. Dr. Jensen further testified that the Athletic Orthopedic & Knee Center would have records relating to the 2002 visits, but he had not seen those records, did not have them with him, and was not able to obtain them during the deposition. (Doc. 220, Ex. I at 56:10-57:18).

On April 8, 2011, Defendants filed the instant motion. According to the motion, as of the filing of the motion, Defendants still had not received any additional records regarding the services rendered to Ms. Lusk in 2002. (Doc. 220 at p. 5). In the motion, Defendants note that throughout discovery, Ms. Lusk repeatedly failed to identify the care she received in 2002. Specifically, in response to an interrogatory that asked her to identify all personal injuries, other than the ones which are the focus of this lawsuit, that she had sustained in her lifetime and that required the services of a medical doctor or other health care provider, Ms. Lusk answered "none." (Doc. 220, Ex. B). Ms. Lusk also failed to identify Dr. Jensen in response to an interrogatory asking her to identify each health care provider she had visited during the 10 years prior to the accident. (Doc. 220, Exs. B & D -E). Additionally, when asked during her deposition whether she had any health problems prior to the December 2004 automobile accident, Ms. Lusk responded: "None that I know of." (Doc. 220, Ex. C at 16:17-25). Ms. Lusk likewise failed to identify Dr. Jensen when asked during her deposition to list all the doctors she had seen from December 1994 to December 2004. (Doc. 220, Ex. C at 17:1-19:22).

On April 18, 2011, Plaintiffs filed their opposition to the motion. Attached as an exhibit to the opposition are 31-pages of records from the Athletic Orthopedic & Knee Center pertaining to the services rendered to Ms. Lusk in September 2002. (Doc. 226, Ex. J). The opposition also includes an Affidavit of Billye Lusk in which she avers, *inter alia*, that:

> I am concerned about the news I got stating the Defendants believe I deliberately omitted a previous visit with Dr. Jensen's office in 2002. I would never lie about something so important. I honestly did not remember going to Dr. Jensen until my husband and I started the search for a Knee doctor. I, of course, remembered after I went to the internet looking for a knee doctor. I was at a point where the pain was affecting every aspect of my life. I could not have any quality of life until I got over my fear of surgery and took action. When I saw Dr. Jensen's name and profile I remembered going many years prior, I was not sure what year. I went to his officer for the second time November 2, 2010.

3

> If I was trying to hide the earlier visit in 2002, I would never have gone back. Also, if I was trying to hide this information I would never have allowed this doctor to do my surgeries. When I remember I had gone to Dr. Jensen, I knew if I allowed this information to be entered in the record how it would look. I even asked my husband if he would believe someone could forget a visit to the doctor 8 years prior. I knew in my heart I could not live with this information. When I went to Dr. Jensen for the injury related to the accident, in 2010, I told him, I now remember being here years ago. He looked up the records and it showed I had been there over eight years prior. In my Interrogatories I was asked if I had sustained injuries prior to the subject accident. It is true that I responded with "no", however there is a reason. First of all, I said no because I did not even remember this one visit to the doctor years prior and secondly because there was no previous injury. There was no injury found or noted by the doctor. He told me to stretch my calf muscles and therapy would help. I never went back to Dr. Jensen's office again because the pain went away."

(Doc. 226, Ex. B).[1] Further, Plaintiff submit an excerpt from Ms. Lusk's deposition wherein she testified that she is terrible with dates. (Doc. 226, Ex. C at 15:14-18; *see also* Doc. 226, Ex. D at 23:8-12).

## ANALYSIS

A district court has the discretion to dismiss a case with prejudice for a discovery violation. *See* Fed. R. Civ. P. 37; *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009); *LaFleur v. Teen Help*, 342 F.3d 1145, 1151 (10th Cir. 2003). However, as dismissal is a severe sanction, "it should be imposed only if a lesser sanction would not serve the ends of justice," *LaFleur*, 342 F.3d at 1151 (internal quotations omitted), and only where the

---

[1] In her affidavit, Ms. Lusk also avers that she "was living a nightmare at the time that [her] deposition was taken, which made it very difficult for [her] to remember dates," as her older sister had passed away in 2001 and she was the only living relative to care for her younger sister who had a brain aneurysm in 2002 and was in a coma for three years prior to passing away. (Doc. 226, Ex. B). Ms. Lusk avers that during this period she was a "zombie," as she was working as well as going to the hospital and nursing home two and three times a day to take care of her sister. (*Id.*). The Court notes, however, that there is an inconsistency in the dates. Ms. Lusk's deposition was taken in August 2008 (Doc. 226, Ex. C), which should have been well-after Ms. Lusk's younger sister passed away according to the dates in Ms. Lusk's affidavit.

4

violation is "predicated upon willfulness, bad faith, or [some] fault of petitioner rather than inability to comply." *Garcia*, 569 F.3d at 1179 (internal quotations omitted). When assessing whether a case should be dismissed due to discovery infractions, the Tenth Circuit Court of Appeals has set forth five factors for courts to consider:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.

*Garcia,* 569 F.3d at 1179 (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992). The Court, having considered the above factors, will deny Defendants request that it dismiss Ms. Lusk's claims.

As to the degree of actual prejudice, the Court finds that there has been prejudice to Defendants, but that this prejudice can be remedied by less severe sanctions. Undoubtedly, any knee condition Ms. Lusk may have suffered prior to the alleged accident is directly relevant to the issue of whether Ms. Lusk's knee injuries were a result of 2004 automobile action or a pre-existing injury. The September 2002 records from the Athletic Orthopedic & Knee Center indicate that in mid-September 2002, Ms. Lusk was experiencing constant aching in both knees and that her injury was acute and chronic. (Doc. 226, Ex. J). The records further reveal that Ms. Lusk had been experiencing pain for approximately two month prior to her examination. (*Id.*). The pain was described as a 5 out of 10 when standing and an 8 out of 10 when lying down at night. (*Id.*). The records also appear to indicate that approximately six month prior to the examination, Ms. Lusk experienced pain in the back of her left knee after she squatted down, at which point she went to the doctor, was given anti-inflammatories, and got better, but then gradually both knees started hurting going up stairs. (*Id.*). On the other hand, the records also indicate that Ms. Lusk only visited the Athletic Orthopedic & Knee Center twice (on September

5

16 and 19, 2002) and that she was discharged as of November 5, 2002, as she did not return to therapy.  (Doc. 220, Ex. G; Doc. 226, Ex. J).  In this regard, the records are consistent with Ms. Lusk's explanation in her affidavit that she "never went back to Dr. Jensen's office again because the pain went away."  (Doc. 226, Ex. B).

There is no question but that all documents relating to services Ms. Lusk received at the Athletic Orthopedic & Knee Center in 2002 should have been produced immediately upon their discovery and that Plaintiffs' failure to produce these documents earlier deprived Defendants of an opportunity to depose Dr. Jensen regarding these records and to explore the possible defense that Ms. Lusk's knee injuries pre-dated the 2004 automobile accident.  However, as the medical records are relatively limited—consisting of approximately 31-pages—and encompass only two visits, the Court finds that the prejudice to Defendants can be mitigated by providing Defendants an opportunity to depose Dr. Jensen regarding these medical records and Ms. Lusk's September 2002 visits to the Athletic Orthopedic & Knee Center.  The Court will also order Plaintiffs to immediately produce any medical records from earlier in 2002 when Ms. Lusk apparently was prescribed anti-inflammatory drugs for her knee.  Should the deposition of Dr. Jensen or documents produced lead Defendants to believe that they need additional discovery regarding Ms. Lusk's treatment in 2002, Defendants should file a motion with the Court seeking leave to conduct such discovery.

The Court further finds that there has been some interference with the judicial process.  At a minimum, Plaintiffs failure to produce these documents earlier has created the need for this Court to reopen discovery less than one-month prior to trial so that Defendants can re-depose Dr. Jensen.  It has also created additional motion practice, as well as potentially placed the May 2011 trial date at risk should Dr. Jensen be unavailable for deposition.  Moreover, the Court

notes that this is not the first time that Plaintiffs' lack of diligence has interfered with the judicial process. (*See, e.g.,* Doc. 138 ("The Court concludes that the lack of diligence shown by Plaintiffs has extended the litigation in this matter to an unnecessary degree."); Doc. 161 (Plaintiffs failed to properly object to jury instructions and instead simply stated they preferred their alternative instruction); Docs. 162-163 (noting Plaintiffs failed to approve the consolidated witness and exhibit lists prior to the filing deadline); Doc. 176 (extending deadline for Plaintiffs to oppose motions *in limine*, as Plaintiffs did not timely file their oppositions)). The Court, however, believes that once Defendants are provided the opportunity to conduct the limited discovery necessitated by Plaintiffs' late disclosure, this case can proceed expeditiously to trial.

As to the culpability of the litigants, the Court finds that there is some culpability but not to the degree to which Defendants imply. The Court does not find that Ms. Lusk's failure to disclose Dr. Jensen or the knee pain she experienced in 2002 in response to interrogatories and during her deposition was willful or intentional. Rather, the Court finds Ms. Lusk's explanation that she did not recall having visited Dr. Jensen to be credible in light of the fact that her 2002 visits to the Athletic Orthopedic & Knee Center occurred approximately six years prior to the discovery at issue and were limited to two visits, after which the pain apparently subsided. The Court further believes that were Ms. Lusk intentionally intending to hide her 2002 care from Defendants, she would not have elected to see Dr. Jensen in November 2010 or have him perform her December 2010 knee surgeries. That said, based on Ms. Lusk's affidavit, it is clear that Ms. Lusk remembered that she went to Dr. Jensen when she started looking for a knee doctor to perform her surgeries. Thus, by at least November 2, 2010—when Ms. Lusk first returned to the Athletic Orthopedic & Knee Center—and presumably at some point prior to that when she was researching doctors, Ms. Lusk had remembered about her earlier care by

Dr. Jensen and was obliged to disclose this information.

Moreover, by approximately March 21, 2011, Plaintiffs' counsel should have been aware that Dr. Jensen had previously provided services to Ms. Lusk as on March 21, 2011, Julieta M. Rodriguez (who is in charge of billing records for the Athletic Orthopedic & Knee Center) signed an affidavit authenticating the ledger that contains four entries for services provided in September 2002. (Doc. 220, Ex. G). Further, Ms. Rodriguez's affidavit notes that the attached billing records "provide an itemized statement of the service and the charge for service that Athletic Orthopedic [&] Knee Center provided to Billye Lusk from the 16 day of Sept, 2002, and up to the 24 day of February, 2011." (*Id.*). By March 22, 2011, Plaintiffs' counsel had identified Ms. Rodriguez's affidavit and the attached ledger as a trial exhibit and had e-mailed it to Defendants' counsel. The fact that the ledger was immediately e-mailed to Defendants' counsel suggests that there was no willful attempt on the part of counsel to conceal the 2002 visits. There does, however, appear to be a lack of diligence and attentiveness to this litigation. As soon as Plaintiffs' counsel saw the ledger and Ms. Rodriguez's statement, they should have done everything in their power to investigate what services were provided to Ms. Lusk in 2002 and to obtain and disclose to Defendants all records relating thereto prior to the deposition of Dr. Jensen.

As to the whether the Court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance, the Court notes there was no such warning in this case. However, as Defendants note, the lack of such a warning is not dispositive. *See Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995).

Finally, the Court must consider the efficacy of lesser sanctions. While Defendants argue that lesser sanctions would not be effective, the Court disagrees. As noted above, the Court finds

that potential prejudice to Defendants can be mitigated by providing Defendants with an opportunity to re-depose Dr. Jensen and by awarding Defendants certain costs and fees, including those costs and attorney's fees incurred in bringing Motion to Dismiss for Discovery Abuse, in conducting the March 31, 2011 deposition of Dr. Jensen, and in conducting any subsequent deposition of Dr. Jensen.

## CONCLUSION

Applying the *Ehrenhaus* factors, the Court finds that monetary sanctions are more appropriate than dismissal. The Court further finds that any potential prejudice to Defendants can be mitigated by providing Plaintiffs with an opportunity to re-depose Dr. Jensen.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for Discovery Abuse (Doc. 220) is denied.

**IT IS FURTHER ORDERED** that Defendants shall be permitted to depose Dr. Jensen regarding the services the Athletic Orthopedic & Knee Center provided to Plaintiff Billye Lusk in 2002. Such deposition shall be scheduled by Defendants. Plaintiffs shall also immediately produce any other medical records from 2002 relating to any care or complaints Ms. Lusk had regarding her knees (including but not limited to records relating to any anti-inflammatory drugs she may have been prescribed). Plaintiffs are warned that failure to comply with this order could result in dismissal of Ms. Lusk's claims.

**IT IS FURTHER ORDERED** that Plaintiffs are sanctioned for the reasonable costs, including fees, that Defendants incurred in preparation of the Motion to Dismiss for Discovery Abuse and in connection with the March 31, 2011 and any subsequent deposition of Dr. Jensen.

Defendants shall submit a fee application within 10 days following the second deposition of Dr. Jensen or, if Plaintiffs elect not to conduct a second deposition, prior to the commencement of trial.

Dated this 9th day of May 2011.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs:
    Conrell Brown, Esq.
    Janeri Rivero, Esq.
    Frank V. Balderrama, Esq.

Attorney for Defendants:
    Nicole M. Charlebois, Esq.
    Christopher R. Reed, Esq.